CLEMSON (DAVIS v.). See Case No. 3,630.

---

## Case No. 2,886.

### The CLEOPATRA.

[5 Ben. 290; [1] 14 Int. Rev. Rec. 29.]

District Court, E. D. New York. July, 1871.

SMUGGLING—FORFEITURE — EVIDENCE OF INFORMERS.

Seamen engaged on board a steamship were arrested while engaged in smuggling segars, which they had brought into the port on board of her. The seamen were promised immunity, and an information having been filed against the steamship to forfeit her under the 50th section of the statute of March 2, 1799 (1 Stat. 665), the evidence of the seamen was relied on to secure the forfeiture. It appeared that neither the owners, nor the master, nor any officer of the ship, was engaged in or knew of the smuggling, but all had been solicitous to prevent smuggling. *Held*, that the evidence of the men was sufficient to sustain the action, and the decree required by the statute must follow, but that the course pursued in the matter by the government officials was open to severe criticism. The district attorney was therefore recommended to present the facts to the attorney general, before the signature of the decree.

In admiralty.

J. J. Allen, Asst. Dist. Atty., for the United States.

Sherwood & Howland, for claimants.

BENEDICT, District Judge. The charge against this steamer is, that segars, subject to duty, were imported in her, and landed from her in the night, and without a permit, in violation of the 50th section of the statute of March 2d, 1799, according to which a forfeiture of the vessel follows such acts. The proof of the charge consists of the evidence of hands employed on the steamship, who were arrested for smuggling certain segars, which were found in their possession and seized. Although the evidence is open to some suspicion, still I am bound to declare it sufficient to maintain the action. The commission of the offence is sworn to positively by the offenders. The segars said to have been landed from the steamer were actually found, and no evidence is produced to disprove the statements of these witnesses. The value of the segars landed is proved to have exceeded $400, and consequently I am bound to render the decree, which the law declares shall follow when such proof is made. In

---

[1] [Reported by Robert D. Benedict, Esq., and here reprinted by permission.]

performing this duty, I must say that, if I had any discretion in the premises, I should certainly abstain from any action in the pro-·· ceeding. Provisions of law which render ships liable to forfeiture for smuggling, conducted by their means, though without the action or connivance of the owners or officers of the vessels, seem to be necessary. Such laws are undoubtedly severe, but they are accompanied with the power of remission which is conferred upon the secretary of the treasury, and, if judiciously administered, they tend to reduce the amount of smuggling.

The temptation to smuggle is great, and the temptation to wink at it is also great; but by laws which imperil the ships themselves, which are the vehicles ordinarily made use of to accomplish the crime, masters and owners are impelled to exert themselves in detecting the smugglers, and bringing them to justice. The object of the law is manifestly to insure the detection and punishment of actual offenders and their aids; but here it has been used to secure immunity for the offenders, and, by forfeiting the ship, to punish only the innocent. According to the evidence, neither the owners nor officers of this steamer knew anything about the criminal acts which their employees were perpetrating. The officers of the customs prove that the owners have been solicitous to prevent smuggling in the vessel. Their acts prove their solicitude to be real, and yet their steamer is forfeited, while the offenders go free. At least two of the men engaged and interested in the act of smuggling were arrested in New York City. They confessed their guilt to the persons arresting them, and were then promised immunity. The information thus acquired is not used to convict any person engaged in the adventure. The boatman who transported the segars in his boat does not appear to have been arrested, and, in fact, one of the offenders was at once taken into the employment and pay of the United States. But the steamer is seized, and sent here for prosecution, where the testimony of the smugglers is relied on to condemn her, and this without any pretence of any criminality or even neglect on the part of her owners or officers. The effect of such a prosecution is to say to seamen, stewards, firemen, and others on steamers, "If you smuggle, and are caught, you will not be prosecuted; the steamer only will be seized." I cannot believe that such a result should be permitted.

But the responsibility of instituting and suspending prosecutions does not rest upon the court. The simple duty of the judge is to pronounce the decision which the law and the evidence produced by the parties requires; and upon those who are charged with directing the legal proceedings of the government must rest the responsibility which attaches to this mode of administering the law. I recommend, however, to the district attorney, that before I am asked to sign a decree in accordance with this opin-

ion, the facts attending the case be communicated to the attorney general for his information.

CLEOPATRA, The (UNITED STATES v.). See Case No. 2,886.

CLERK'S FEES, Case of. See Case No. 472.

CLERK'S FEES IN BANKRUPTCY CASES. See Append. Fed. Cas.

CLEVELAND, The (HUNT v.). See Case No. 6,885.

CLEVELAND (BHOLEN v.). See Case No. 1,-381.